IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VIRNA BEULAH, | ) | CASE NO. 1:17 CV 791 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION** |
| SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

## Introduction

Virna Beulah sought supplemental security income benefits because of multiple mental impairments and osteoarthritis. The Commissioner found her capable of performing her past relevant work as a housekeeping cleaner as generally performed[1] and, alternatively, capable of performing a significant number of jobs existing in the national economy.[2] This decision lacks the support of substantial evidence in the record. I, therefore, reverse the Commissioner's decision and remand for further consideration.[3]

## Analysis

The oral argument in this case brought into focus the two issues for decision:

- The ALJ assigned the opinion of treating psychiatrist Gary Wilkes, M.D., little weight and excluded from the RFC Dr. Wilkes's quantifiable limitations on the ability to complete a normal workday and workweek without unreasonable

---

[1] ECF # 10, Transcript ("Tr.") at 139.
[2] *Id.*
[3] The parties have consented to my jurisdiction. ECF #13.

interruptions and breaks. She gave great weight to the opinions of two state agency reviewing psychologists who offered no quantifiable limitations despite rating Beulah's ability to complete a normal workday and workweek moderately limited. Does substantial evidence support these weight assignments?

- The ALJ adopted a light exertional RFC. No source opinions support his finding. The ALJ gave a state agency reviewing physician's opinion that Beulah could perform medium work "only some weight" because she did not review later medical records evidencing greater limitations. Does substantial evidence support the light exertional RFC?

**A.     Treating source**

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[4] emphasized that the regulations require two distinct analyses in evaluating the opinions of treating sources.[5] The *Gayheart* decision directed that the ALJ must first determine if the opinion must receive controlling weight as well-supported by clinical and laboratory techniques and as not inconsistent with other evidence in the administrative record.[6] If the ALJ decides not to give the opinion controlling weight, then a rebuttable presumption exists that the treating physician's opinion should receive great deference.[7] This presumption may be rebutted by application of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6).[8] The Court cautioned against collapsing these two distinct analyses into one.[9]

---

[4] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).
[5] *Id.* at 375-76.
[6] *Id.* at 376.
[7] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).
[8] *Gayheart*, 710 F.3d at 376.
[9] *Id.*

2

Despite the seemingly clear mandate of *Gayheart*, the Sixth Circuit in later decisions has adopted an approach that permits these two separate analyses to be merged into one so long as the ALJ states "good reasons" for the weight assigned applying the regulatory factors governing each analytical step.[10] Also, despite the reality that a unified statement of these "good reasons" greatly enhances meaningful judicial review,[11] some authority exists for looking outside the unified statement for analysis of the weight assigned to a treating source's opinion.[12] Going beyond the reasons stated in the unified statement takes the Court in the hazy gray area where the sirens of *de novo* review and *post hoc* rationalization reside. A reviewing district court must avoid both. An ALJ cannot avoid reversal by merely citing exhibits in the record that might support her findings without discussing the content of those exhibits and explaining how that content provides support.[13] Nor can counsel for the Commissioner save a decision from reversal by citing to evidence in the record not cited and adequately discussed by the ALJ.[14] It is for the ALJ, not the court or Commissioner's counsel, to "build a logical bridge from the

---

[10] *E.g., Biestek v. Comm. of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).
[11] *Smith v. Comm. of Soc. Sec.*, No. 5:13cv870, 2104WL1944247, **7-8 (N.D. Ohio May 14, 2014).
[12] *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001).
[13] *Smith*, 2104WL1944247, at *7.
[14] *Sharp v. Comm'r of Soc. Sec.*, No. 1:14-cv-523, 2015 WL 3545251 (S.D. Ohio June 4, 2015) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014)), *report and recommendation adopted by* 2015 WL 3952331 (S.D. Ohio June 29, 2015).

evidence to the conclusion."[15]  "Put simply, . . . there must be some effort . . . to explain why it is the treating physician's conclusion that gets the short end of the stick."[16]

With these principles in mind, I turn to the treatment of Dr. Wilkes's opinion.

As context, all sources in the record agree that Beulah's severe mental impairments impose at least moderate limitations in the ability to complete a normal workday and workweek without unreasonable interruptions and breaks.[17]  Only Dr. Wilkes quantifies this ability, which he rated as rare.[18]   The state agency reviewing sources identified limitations to address Beulah's diminished capability.[19]  But the ALJ must adequately explain why the treating source opinion should not receive controlling weight, and then may resort to the state agency reviewing sources to explain good reasons for rebutting the presumption that the source opinion receive great deference. Critical to the issue of the weight afforded to Dr. Wilkes's opinion, the vocational expert ("VE") in this case testified the requisite number of existing jobs would not exist if Beulah's limitations caused absence from the job for more than one day a month or off-task more than 15 percent of the workday.[20]

Turning first to the unified statement about weight afforded to Dr. Wilkes, the ALJ provided quantity.  Her discussion encompasses a long paragraph stretching over two

---

[15] *Hale v. Colvin*, No. 3:13cv182, 2014 WL 868124, *8 (S.D. Ohio March 5, 2014).
[16] *Friend* v. *Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).
[17] Tr. at 215, 230-31, 502-10, and 1497-99.
[18] *Id.* at 1499.
[19] *Id.* at 215, 230-31.
[20] *Id.* at 200-03.

4

pages.[21] She concedes that Dr. Wilkes opined that Beulah "can only rarely deal with work stress or complete a normal work day/work week without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods."[22] She meets this with the boilerplate objection that the opinion is void of objective findings and is inconsistent with the evidence of record. This alone will not cut it, as case law makes clear.[23] She makes no reference in the unified statement to any clinical records other than those of Murtis Taylor Center, where Dr. Wilkes practices and where Beulah receives treatment, that indicate some improvement in her mental impairments.[24] Assuming *arguendo* that Beulah did show improvement from time to time, viewing the records of the Center longitudinally and holistically, she cycled between stability and instability.[25] The records do not indicate improvement to the point where she could maintain an eight hour work day, five days a week within the standards set out by the VE.

Dr. Wilkes did use a "check the box" form that did not contain a narrative. The record does contain, however, his treatment notes and those of the Murtis Taylor Center where he practices and where Beulah had a treating relationship with Dr. Wilkes and

---

[21] *Id.* at 136-37.
[22] *Id.* at 136.
[23] *Smith*, 2104 WL 1944247, at *7.
[24] Tr. at 137.
[25] *Id.* at 467-78, 955-69, 1159-1176, and 1500-1511.

other psychiatrists in his group.[26] As such, the use of the "check the box" form does not

*per se* justify discounting Dr. Wilkes's opinion.[27]

The ALJ made the observation that Dr. Wilkes had "recently began treating the claimant at Murtis Taylor.[28] The Commissioner's brief raises this observation to the status of a reason given by the ALJ for discounting the weight of the opinion – that he is not a treating source. The ALJ does not say that. Adopting this argument would require impermissible reliance on *post hoc* rationalization.[29]

The balance of the ALJ's articulation goes to Beulah's daily activities. The daily activities noted do not equate with the ability to maintain sustained employment without absences and off-task episodes.[30] In sum, the unified statement does not contain good reasons for discounting the weight assigned to Dr. Wilkes's opinion.

I have also reviewed the ALJ's discussion of Beulah's mental impairments and limitations outside the unified statement. Although this discussion is extensive,[31] I find nothing addressing the issue of her ability to complete a work day or work week without unacceptable absences or off-task episodes. The analysis centers exclusively on support

---

[26] *Id.*
[27] *E.g., Rueda v. Berryhill*, No. 1:17cv1878, 2018 WL 3304626, **17, 20 (N.D. Ohio June 22, 2018) (discussing Sixth Circuit precedent), *report and recommendation adopted by* 2018 WL 3302928 (N.D. Ohio July 5, 2018).
[28] Tr. at 136.
[29] *Wooten v. Astrue*, No. 1:09 CV 981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010) ("The Commissioner's *post hoc* arguments in support of the ALJ's decision are immaterial.").
[30] *Gayheart*, 710 F.3d at 377-78.
[31] Tr. at 132-136, 137-38.

for the limitations set out in the state agency reviewing sources' opinions. Beulah takes no issue with these limitations. Rather, she argues that the RFC should have included additional limitations on her ability to satisfactorily complete a work day and work week. The off-unified statement articulation does not address this.

Given the VE's testimony that the absence and off-task limitations would preclude past relevant work and the existence of a significant number of jobs in the economy, the weight assignment given by the ALJ to the opinion of Dr. Wilkes does not have the support of substantial evidence.

**B.    Exertional limitations**

The reversal and remand on the treating source issue obviates the need to decide the second issue challenging the RFC's light work exertional limitations. The ALJ should reconsider that finding on remand. To that end, the record contains no source opinion supporting light exertional limitations. The state agency reviewing physician opined that Beulah could perform medium work,[32] but the ALJ rejected this opinion in favor of limitations to light work. In doing so, the ALJ cited medical records that the state agency reviewing physician did not review.[33] It may be helpful to have a medical expert review these records to opine if at some point in the relevant period Beulah could not perform at the light level or additional limitations beyond light work should be added to the RFC. This may trigger the need for further testimony of a VE about past relevant

---

[32] *Id.* at 232.
[33] *Id.* at 131.

work or the existence of a significant number of existing jobs in the economy that she could perform.

## Conclusion

The RFC adopted by the ALJ lacks the support of substantial evidence because the ALJ did not properly analyze and articulate as to the opinion of psychiatrist Gary Wilkes, M.D. I, therefore, reverse the decision of the Commissioner denying the application for supplement security income benefits and remand for reconsideration with proper analysis and articulation as to the weight assigned Dr. Wilkes's opinion. On remand, the ALJ should also reconsider the RFC's exertional limitations with the assistance of the opinion of a medical expert, if appropriate.

IT IS SO ORDERED.


Dated: July 30, 2018　　　　　　　　　　　　　　　s/ William H. Baughman, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge